IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

JOSEPH D. PLANTHOLT, *et al.*

    *Plaintiffs*,

    v.                          Civil No. ELH-14-2091

LOWE'S HOME CENTERS, LLC

    *Defendant*.

## MEMORANDUM

Joseph D. Plantholt and his wife, Cindy Plantholt, plaintiffs, have filed suit against Lowe's Home Centers, LLC ("Lowe's"), defendant, with respect to an injury sustained by Mr. Plantholt on March 6, 2012, when he slipped on a patch of ice at a Lowe's store in Timonium, Maryland. ECF 2.[1] Mr. Plantholt was at the Lowe's store in connection with his seasonal, part-time employment with Scott's Miracle Grow Company ("Scott's"), a Lowe's vendor. At the relevant time, Mr. Plantholt was located in the outside garden section of the Lowe's store, and was involved in a product display for Scott's. As a result of Mr. Plantholt's fall, he broke his leg and his ankle, for which surgery and rehabilitation were required.

In Count I of the Complaint, plaintiffs allege that Lowe's was negligent. Plaintiffs aver that Mr. Plantholt was an invitee for a purpose related to Lowe's' business and Lowe's failed to exercise ordinary care to maintain the premises safely for Mr. Plantholt. ECF 2 at 5. Count II contains a claim by Mr. and Ms. Plantholt for loss of consortium. *Id.* at 5.

---

[1] Suit was initially filed in the Circuit Court for Carroll County, Maryland. It was timely removed to this Court (ECF 1), based on diversity of citizenship. *See* 28 U.S.C. § 1332. Initially, plaintiffs also sued Lowe's Home Improvement, LLC and Lowe's Home Centers, Inc. However, those parties have been dismissed. *See* ECF 1, ¶ 4.

Lowe's has moved for summary judgment (ECF 26), supported by a memorandum (ECF 26-1) as well as several exhibits.  Plaintiffs have filed an opposition to Lowe's motion (ECF 30), along with many exhibits.  In addition, plaintiffs have moved for partial summary judgment as to the affirmative defense of assumption of the risk.  ECF 27.  Their motion is supported by a memorandum (ECF 27-1) as well as several exhibits.  Lowe's has filed an opposition to plaintiffs' motion (ECF 28) and has submitted another exhibit.  Plaintiffs have replied.  ECF 29.

In sum, the motions have been fully briefed and no hearing is necessary to resolve them. *See* Local Rule 105.6.  For the reasons set forth below, I will deny both motions.

## I.  Factual Summary

At the relevant time, Mr. Plantholt worked as a part-time seasonal merchandiser for Scott's and worked full-time as a technician for SAFT America.  Plantholt deposition, ECF 26-2 at 9.[2]  As a merchandiser for Scott's, Mr. Plantholt was responsible for keeping various retail stores stocked with Scott's products, including the Lowe's store in Timonium, Maryland.  *See generally* Plantholt deposition, ECF 27-2 at 17-25.  Prior to March 6, 2012, Mr. PlantholT had been to the store in issue hundreds of times.  Plantholt deposition, ECF 27-1 at 30.

On March 6, 2012, Mr. Plantholt arrived at the Lowe's store at about 7:00 a.m.  ECF 27-2 at 14-15.  He engaged in a number of tasks, such as ensuring the visibility of Scott's brochures. *Id.* at 15-24, 30-32.  He then loaded a pallet of Scott's product onto a pallet jack for the purpose of arranging a display of the Scott's items for sale.  ECF 27-2 at 30-33.  According to plaintiffs,

---

[2] Both sides have submitted excerpts of deposition testimony of various witnesses, with some duplication in the excerpts.  There are also duplicates of photographs.  Where there are multiple submissions of duplicate items, I have generally cited to only one of the exhibits.

In addition, when citing to the depositions, I refer to the page number of the deposition, rather than the ECF page number.

no one at Lowe's warned Mr. Plantholt of an ice patch in the area where he was about to place the products.

At about 9:00 a.m. (ECF 27-2 at 17), Mr. Plantholt began to pull the pallet jack while walking backwards and looking over his left shoulder to see where he was going. ECF 27-2 at 54-56. He chose the path in issue because it "was the closest point to [his] final destination." ECF 27-2 at 38. He hit a patch of ice, fell, and severely broke his ankle and his leg. ECF 27-2 at 99-102. There were no eyewitnesses to the fall. *Id.* at 100. Mr. Plantholt claimed that he first realized he walked on ice when he was on it. ECF 27-2 at 50. Until then, he could not determine what was on the floor, *id.* at 51, but assumed it was water. *Id.* at 52.

The parties have submitted photographs of the scene depicting a cone on the ice. *See* ECF 30-2. However, the parties dispute when the cone was actually placed on the ice, warning of the danger. Lowe's asserts the cone was placed on the ice prior to the incident, but plaintiffs dispute this assertion. Mr. Plantholt indicated that someone moved the cone onto the ice for the sake of photographs. ECF 27-2 at 46-48.

After Mr. Plantholt fell, Sherry Cavey, then the Lowe's Freight Flow Manager, was called to the scene to unlock a gate needed to provide ambulance access. Cavey deposition, ECF 30-3 at 11-12. She testified that, when she arrived at the scene, she did not see a cone warning of the ice. *Id.* at 52. She stated: "I didn't see it there, it wasn't there." *Id.*

Michael Leibforth, Mr. Plantholt's supervisor at Scott's, went to the store and took photographs of the scene. *See* Leibforth deposition, ECF 30-4 at 11-12; *id.* at 24-27. At his deposition, he testified that he was told by a vendor that a person at the location, who "may have been another vendor," had "picked up the cone and put it there," *i.e.*, on the icy patch, after Mr. Plantholt's fall. ECF 30-4 at 25. Moreover, he was told by representatives of Lowe's that, on

the evening prior to the incident, a hose had been left dripping.  *Id.* at 23.  Because it was cold on the morning in issue, ice had formed.  It was Liebforth's understanding that Lowe's was aware of the dangerous condition prior to Mr. Plantholt's fall.

Patricia Romeo, the assistant Lowe's store manager at the time, was also deposed.  *See* Romeo Deposition, ECF 30-5.  She related her practice of conducting a safety inspection early every morning, beginning with the outside garden center.  *Id.* at 55.  Ms. Romeo discovered the icy patch at about 6:30 a.m.  *Id.* at 113.  She explained that "it looked a little slick.  And, so, it was icy there."  *Id.* at 65.  She maintained that she "marked" the icy area with "a caution cone" in "the middle of the area" and "notified [her] associates."  *Id.* at 63-65.  Nevertheless, there was no notation of the ice hazard on the Daily Safety Review form.  *Id.* at 69.  In addition, she claimed that she instructed another Lowe's employee, Ronald Lewis, to apply ice melt to the area.  *Id.* at 67-69.  But, she did not witness salt put onto the subject area.  *Id.* at 91-92, 70.

According to Ms. Romeo, immediately after the incident she asked Mr. Plantholt if he saw the "caution sign" and he allegedly responded:  "I saw the sign, but it looked wet. . . ."  ECF 30-5 at 100.  *See also* ECF 30-6 (Lowe's Incident Report).  However, Mr. Plantholt has denied that he conversed with Ms. Romeo at the scene about the cone.  ECF 30-1 at 61-63.

Mr. Lewis no longer works for Lowe's.  But, plaintiffs were able to locate and depose him.  He denied that he was at work at the time of the occurrence.  Mr. Lewis's absence from work at the relevant time is confirmed by his work schedule.  *See* Weekly Schedule Report, ECF 30-8.  Moreover, Mr. Lewis claims that he was never instructed to put salt down on the icy patch prior to Mr. Plantholt's fall.  *See* Lewis Deposition, ECF 30-7 at 12-13, 17, 35-38, 58.

## II.  Standard of Review

Summary judgment is governed by Fed. R. Civ. P. 56(a).  It provides, in part: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The non-moving party must demonstrate that there are disputes of material fact so as to preclude the award of summary judgment as a matter of law. *Matsushita Elec. Indus. Co. v. Zenith, Radio Corp.*, 475 U.S. 574, 586 (1986).

The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion.  "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc*., 477 U. S. 242, 247-48 (1986) (emphasis in original).  A fact is "material" if it "might affect the outcome of the suit under the governing law." *Id*. at 248. There is a genuine issue as to material fact "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*.; *see Dulaney v. Packaging Corp. of Am.*, 673 F.3d 323, 330 (4th Cir. 2012).

"A party opposing a properly supported motion for summary judgment "may not rest upon the mere allegations or denials of [his] pleadings, but rather must set forth specific facts showing that there is a genuine issue for trial." *Bouchat v. Baltimore Ravens Football Club, Inc*., 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)), *cert. denied*, 541 U.S. 1042 (2004).  However, the court should "view the evidence in the light most favorable to . . . the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witness' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc*.,

290 F.3d 639, 644-45 (4th Cir. 2002); *see Matsushita Elec. Indus. Co.*, 475 U.S. at 587; *FDIC v. Cashion*, 720 F.3d 169, 173 (4th Cir. 2013).

The district court's "function" is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. Of import here, the trial court may not make credibility determinations on summary judgment. *Jacobs v. N.C. Administrative Office of the Courts*, __ F.3d ___, No. 13-2212, slip op. at 12 (4th Cir. March 12, 2015); *Mercantile Peninsula Bank v. French*, 499 F.3d 345, 352 (4th Cir. 2007); *Black & Decker Corp. v. United States*, 436 F.3d 431, 442 (4th Cir. 2006); *Dennis*, 290 F.3d at 644-45. Indeed, in the face of conflicting evidence, such as competing affidavits or conflicting deposition testimony, summary judgment is generally not appropriate, because it is the function of the factfinder to resolve factual disputes, including matters of witness credibility. *See*, *e.g.*, *Boone v. Stallings*, 583 Fed. App'x. 174 (4th Cir. 2014) (per curiam).

When, as here, the parties have filed cross-motions for summary judgment, the court must consider "each motion separately on its own merits 'to determine whether either of the parties deserves judgment as a matter of law.'" *Rossignol v. Voorhaar,* 316 F.3d 516, 523 (4th Cir. 2003) (citation omitted), *cert. denied,* 540 U.S. 822 (2003); *see Mellen v. Bunting*, 327 F.3d 355, 363 (4th Cir. 2003). "Both motions must be denied if the court finds that there is a genuine issue of material fact. But if there is no genuine issue and one or the other party is entitled to prevail as a matter of law, the court will render judgment." 10A Wright, Miller & Kane, *Federal Practice & Procedure* § 2720, at 336–37 (3d ed. 1998, 2012 Supp.).

If "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," then a dispute of material fact precludes summary judgment. *Anderson*, 477 U.S. at 248. *See Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013). On the other hand,

summary judgment is appropriate if the evidence "is so one-sided that one party must prevail as a matter of law." *Id.* at 252. But, "the mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id*.

### III.  Discussion

Lowe's contends that the warning cone was "conspiculously present in the area" where Mr. Plantholt fell. ECF 26 at 2; 26-1 at 2. It maintains that it did not breach the duty of care owed to Mr. Plantholt "because a yellow caution cone was placed in the area, which gave Mr. Plantholt adequate warning to avoid the dangerous condition that ultimately caused his injury." ECF 26-1 at 4. Moreover, Lowe's argues: "Plantholt breached his duty to exercise due care for his own safety while walking backwards while pulling a pallet jack and without adequately affording himself an opportunity to observe the path immediately in front of him." *Id.* In addition, Lowe's argues:  "Plantholt made the decision to attempt to proceed off of the icy area without assistance . . . Plantholt clearly assumed the risk of his injuries as a matter of law." *Id.* For these reasons, Lowe's claims it is entitled to summary judgment.

Plaintiffs seek partial summary judgment with respect to defendant's affirmative defense of assumption of the risk, alleging that Lowe's cannot meet its burden to show that plaintiff had knowledge of the risk of danger; appreciated the risk; and voluntarily confronted the risk of danger. ECF 27. In its opposition, ECF 28, Lowe's argues that it is entitled to judgment as a matter of law on the defense of assumption of the risk.

A.  Choice of Law

A federal court sitting in diversity must apply the law of the state in which the court is located, including the forum state's choice of law rules. *Colgan Air, Inc. v. Raytheon Aircraft*

*Co.*, 507 F.3d 270, 275 (4th Cir. 2007). Regarding tort claims, Maryland applies the law of the state where the alleged harm occurred ("*lex loci delicti*").  *See, e.g.*, *Proctor v. Washington Metropolitan Area Transit Auth.*, 412 Md. 691, 726, 990 A.2d 1048, 1068 (2010); *Erie Ins. Exch. v. Heffernan*, 399 Md. 598, 625, 925 A.2d 636, 651 (2007); *Phillip Morris, Inc. v. Angeletti*, 358 Md. 689, 744, 752 A.2d 200, 230 (2000). Because the alleged events took place in Maryland, the substantive tort law of Maryland governs plaintiffs' negligence and loss of consortium claims.  *See Hauch v. Connor*, 295 Md. 120, 123-24, 453 A.2d 1207, 1209 (1983).

### B.  Negligence Claim

#### 1.  Proof of negligence

Plaintiffs have alleged that Lowe's was negligent.  In Maryland, "to assert a claim in negligence, the plaintiff must prove: '(1) that the defendant was under a duty to protect the plaintiff from injury, (2) that the defendant breached that duty, (3) that the plaintiff suffered actual injury or loss, and (4) that the loss or injury proximately resulted from the defendant's breach of the duty.'"  *100 Inv. Ltd. P'ship v. Columbia Town Ctr. Title Co.*, 430 Md. 197, 212-13, 60 A.3d 1, 10 (2013) (quoting *Lloyd v. Gen'l Motors Corp.*, 397 Md. 108, 131-32, 916 A.2d 257, 270-71 (2007)) (emphasis omitted); *see Schultz v. Bank of Am., N.A.*, 413 Md. 15, 27, 990 A.2d 1078, 1086 (2010) ("In a negligence case, there are four elements that the plaintiff must prove to prevail: 'a duty owed to him [or her] (or to a class of which he [or she] is a part), a breach of that duty, a legally cognizable causal relationship between the breach of duty and the harm suffered, and damages.'") (quoting *Jacques v. First Nat. Bank of Maryland*, 307 Md. 527, 531, 515 A.2d 756, 758 (1986)) (alterations in *Schultz*).

"In 'slip and fall' cases, the duty of care owed by an owner or occupier of a premises is a function of his legal relationship to the person entering on the premises." *Garner v. Supervalu, Inc.*, 396 Fed. App'x 27, 29 (4th Cir. 2010). *See, e.g.*, *Casper v. Chas. F. Smith & Son, Inc.*, 316 Md. 573, 578, 560 A.2d 1130, 1133 (1989) (the duty of an owner or occupier of land "depends upon the status of the plaintiffs at the time of the accident"). Specifically, in Maryland, the duty that an owner or occupier of land owes to persons entering onto the land varies according to the visitor's status as an invitee (*i.e.* a business invitee), a licensee by invitation (*i.e.*, a social guest), a bare licensee, or a trespasser. *Baltimore Gas & Elec. Co. v. Lane*, 338 Md. 34, 44, 656 A.2d 307, 312 (1995); *Wagner v. Doehring*, 315 Md. 97, 101-02, 553 A.2d 684, 686 (1989); *Rowley v. Mayor of Baltimore*, 305 Md. 456, 464-65, 505 A.2d 494, 498 (1986).

The highest duty is owed to a business invitee, defined as "'one invited or permitted to enter another's property for purposes related to the landowner's business.'" *Norris v. Ross Stores, Inc.*, 159 Md. App. 323, 334, 859 A.2d 266, 273 (2004) (citations omitted). *Accord Casper v. Chas. F. Smith & Son, Inc.*, 71 Md. App. 445, 457, 526 A.2d 87, 92 (1987), *aff'd*, 316 Md. 573, 560 A.2d 1130 (1989); *see Lane*, 338 Md. at 44, 656 A.2d at 312; *Howard County Bd. of Educ. v. Cheyne*, 99 Md. App. 150, 155, 636 A.2d 22, 25 (1994), *cert. denied*, 335 Md. 81, 642 A.2d 192 (1994). Lowe's does not concede that Plantholt was an invitee, because "he was there as a vendor . . . ." ECF 26-1 at n.1. Nonetheless, Lowe's seems to have assumed, for the sake of its motion, that Plantholt was an invitee. In any event, it has not presented any authorities that suggest otherwise.

Even as to an invitee, an owner or occupier of land only has a duty to exercise reasonable care to "protect the invitee from injury caused by an unreasonable risk" that

the invitee would be unlikely to perceive in the exercise of ordinary care for his or her own safety, and about which the owner knows or could have discovered in the exercise of reasonable care. *Casper*, 316 Md. at 582, 560 A.2d at 1135; *see Lane*, 338 Md. at 44, 656 A.2d at 312 (stating owner owes "a duty of ordinary care to keep the property safe for the invitee"); *Evans v. Hot Shoppes, Inc.*, 223 Md. 235, 239, 164 A.2d 273, 276 (1960); *Tennant v. Shoppers Food Warehouse Md. Corp.*, 115 Md. App. 381, 388, 693 A.2d 370, 374 (1997); *Pahanish v. Western Trails, Inc.*, 69 Md. App. 342, 355, 517 A.2d 1122, 1128 (1986). But, the duties of a business invitor include the obligation to warn invitees of known hidden dangers, a duty to inspect, and a duty to take reasonable precautions against foreseeable dangers. *Tennant*, 115 Md. App. at 388, 693 A. 2d at 374.

In *Gillespie v. Ruby Tuesday, Inc.*, 861 F. Supp. 2d 637 (D. Md. 2012), Judge Blake of this Court explained: "The duty owed to an invitee is 'to use reasonable and ordinary care to keep [the] premises safe for the invitee and to protect [the invitee] from injury caused by an unreasonable risk which the invitee, by exercising ordinary care for [the invitee's] own safety will not discover.'" *Id.* at 641 (quoting *Deboy v. City of Crisfield*, 167 Md. App. 548, 555, 893 A.2d 1189, 1193 (2006)) (modifications in *Deboy*). *Accord Garner*, *supra*, 396 Fed. App'x at 29; *Bramble v. Thompson*, 264 Md. 518, 521, 287 A.2d 265, 267 (1972); *see also Pahanish*, 69 Md. App. at 355, 517 A.2d at 1128 ("At common law, the landowner's duty to business invitees is to use reasonable and ordinary care to keep his premises in a safe condition and to protect invitees against the dangers of which the landowner is aware or which, with reasonable care, he could have discovered.").

Although the business invitor has a duty to protect against unreasonably dangerous conditions, the business invitor is not an insurer of the invitee's safety. *Moulden v.*

*Greenbelt Consumer Services, Inc.*, 239 Md. 229, 232, 210 A.2d 724, 725 (1965); *Lexington Market Authority v. Zappala*, 233 Md. 444, 446, 197 A.2d 147, 148 (1964).   And, like the owner, the invitee has a duty to exercise due care for his own safety.   This includes the duty to look and see what is around the invitee.   Accordingly, the owner or occupier of land ordinarily has no duty to warn an invitee of an open and obvious danger.   *Casper*, 316 Md. at 582, 560 A.2d at 1135; *Tennant*, 115 Md. App. at 389, 693 A.2d at 374.

Moreover, in PROSSER AND KEETON ON THE LAW OF TORTS ("PROSSER AND KEETON"), § 61 at 426 (5th ed. 1984), the treatise states:

> [T]here is no liability for harm resulting from conditions from which no unreasonable risk was to be anticipated, or from those which the occupier neither knew about nor could have discovered with reasonable care. The mere existence of a defect or danger is generally insufficient to establish liability, unless it is shown to be of such a character or of such duration that the jury may reasonably conclude that due care would have discovered it.

*See also, e.g.*, *Rehn v. Westfield Am.*, 153 Md. App. 586, 593, 837 A.2d 981, 984 (2003) ("'[S]torekeepers are not insurers of their customers' safety, and no presumption of negligence arises merely because an injury was sustained on a storekeeper's premises.'") (quoting *Giant Food, Inc. v. Mitchell*, 334 Md. 633, 636, 640 A.2d 1134, 1135 (1994)), *cert. denied*, 380 Md. 619, 846 A.2d 402 (2004).

With respect to the burden of proof, "[i]n an action by a customer to recover damages resulting from a fall in a store caused by a foreign substance on the floor or stairway, the burden is on the customer to produce evidence that the storekeeper created the dangerous condition or had actual or constructive knowledge of its existence." *Rawls v. Hochschild, Kohn & Co.*, 207 Md. 113, 119, 113 A.2d 405, 408 (1955); *see Garner*, 396 Fed. App'x at 29; *Maiga v. L.F. Jennings, Inc.*, 2010 WL 889670, at *3 (D. Md. Mar. 5, 2010); *Moulden*, 239 Md. at 233, 210 A.2d at 726; *Zappala*, 233 Md. at 446, 197 A.2d at 148;

*Joseph v. Bozzuto Mgmt. Co.*, 173 Md. App. 305, 315-316, 918 A.2d 1230, 1235 (2007). Therefore, at trial the plaintiffs bear the burden to prove negligence.

In this case, the existence of the icy patch is not in dispute.  It is also undisputed that Mr. Plantholt fell on the ice.  Nor is there any contention that Lowe's was unaware of the icy condition.  Indeed, Lowe's claims it knew of the icy patch prior to the fall and put the cone on the ice prior to Mr. Plantholt's fall, as a safety precaution, to warn of the danger.

The factual disputes pertain, *inter alia*, to Lowe's' claims that it warned of the ice by placing a cone on the ice before Mr. Plantholt's fall, and that it also sought to treat the area with salt before the fall.  Lowe's claims that, as a matter of law, Mr. Plantholt was contributorily negligent in walking backwards with the pallet and that he assumed the risk of walking on the ice, despite notice of it.

### 2.  Causation

In *Adams v. Kroger Limited Partnership I*, 527 Fed. App'x 265 (4th Cir. 2013) (per curiam), the plaintiff fell in a Virginia grocery store in an area where a wine vendor had broken a bottle of wine.  *Id.* at 266.  After the wine sales representative broke the wine bottle, he blocked off part of the spill area, swept, mopped, and "put up a yellow warning cone."  *Id.* at 269.  A few minutes later, the plaintiff entered the aisle and fell.  *Id.* at 267.  She sued the wine vendor and the store, claiming negligence.  *Id.*  at 266.

After the plaintiff presented her case at trial, the court granted the defendants' motion for judgment, concluding as a matter of law that the plaintiff did not prove a breach of the duty of care.  *Id.* at 266, 267.  On appeal, the plaintiff argued, among other things, that the jury could have found negligence in using only a cone to mark the area and in placing the cone in an unreasonable location.  *Id.* at 267.

As on summary judgment, the Court viewed the evidence in the light most favorable to the non-movant.  *Id.* at 268 n.1.  The Court agreed that there was evidence in the record, such as the failure to dry the wine spill properly, from which a jury could have found negligence.  *Id.* at 268.  Applying Virginia negligence law, the Fourth Circuit vacated and remanded.  *Id.* at 269.

To be sure, the placement of the cone in *Adams* was not dispositive.  But, in this case, the matter of whether Lowe's undertook the remedial step of placing the cone on the ice is hotly contested.

In *Bass v. Hardee's Food Systems, Inc.*, 982 F. Supp. 1041 (D. Md. 1997), *aff'd*, 229 F.3d 1141 (Table), 2000 WL1124515 (4th Cir. 2000) (per curiam),  the plaintiff sued the owner of a Roy Rogers restaurant after a slip-and-fall in the restaurant's parking lot.  As the defendant noted, under Maryland law a plaintiff fails to meet his burden of proof "'if it appears that the injuries resulted from either defendant's negligence or some other cause, for the existence of which defendant[] is not responsible, unless the plaintiff excludes the independent cause as the proximate cause of the injuries.'"  *Id.* at 1043 (quoting *Rawls*, 207 Md. at 119-20, 113 A.2d at 408).  The defendant emphasized that the plaintiff "did not know what he fell on"; that there were no eyewitnesses to the fall; and that even if, as alleged, the plaintiff had slipped on ice, it "might have come from cars recently entering the parking lot or [plaintiff's] own shoes . . . rather than a consequence of a breach of duty by [the defendant]." *Bass*, 982 F. Supp. at 1043.

The district court concluded that summary judgment was inappropriate in light of the "evidence in the record supporting the conclusion that [the plaintiff's] injury resulted from a breach of duty by defendant," which included evidence that both the plaintiff's wife and a

Roy Rogers manager found ice in the area where plaintiff was found, as well as the plaintiff's testimony "that he did not move from the spot where he fell." *Id.*[3] The court said that a reasonable jury could conclude that the defendant did not use reasonable care "to protect [the plaintiff] from harm," in that, among other things, "remedial steps would have cured the icy build up." *Id.* at 1043-44.

*Konka v. Wal-Mart Stores, Inc.*, 133 F.3d 915 (Table), 1998 WL 24378, at *1 (4th Cir. 1998) (per curiam), is also informative. There, the plaintiff filed suit after falling at a Wal-Mart store. Despite heavy rain, the doors to the store's lawn and garden department, which was located in a covered patio area outside the main store, had been left open. *Id.*; *see id.* at *4. Although the plaintiff's husband observed that the lawn and garden department's tile floor was "shiny and wet," the plaintiff did not, and she suffered a fall. The plaintiff later stated that "her clothes got wet from being on the floor" and, after her fall, "an unidentified Wal- Mart employee came over to see if she was injured and allegedly told [the plaintiff] that the floor 'should have been mopped.'" *Id.*

The Fourth Circuit concluded that "sufficient evidence was presented for a jury to have reasonably concluded either that the wet spot was 'placed' there by Wal-Mart because rain water blew in through the open door, or that some employee did have a special duty to observe the area and watch for hazards." *Id.* at *4. According to the *Konka* Court, a reasonable jury could have inferred, in light of evidence concerning heavy rain that day and the length of the

---

[3] The district court also concluded that a reasonable jury could find that plaintiff had slipped on ice, given that the fall "occurred in January, a few days after a period of snowfall," and that expert testimony indicated that runoff water would have "pooled and froze[n] in the very area" in which the plaintiff fell. *Bass*, 982 F. Supp. at 1043. Moreover, "[t]he expert opined that the dangerous condition was predictable at the time of the accident . . . ." *Id.* at 1043-44. In this case, as noted, there is no dispute that plaintiff fell on ice.

overhang covering the patio, that "Wal-Mart's actions in leaving the door open during the rain. . . caused the wet condition on which [the plaintiff] slipped." *Id.* In the alternative, the Court concluded that a reasonable jury could have found that Wal-Mart was "on constructive notice of the wet and hazardous condition," given that two employees who were responsible for maintaining that area "were aware that it was raining heavily outside and that the door to the patio was open." *Id.* In other words, because a reasonable jury could have found "that [Wal-Mart] either created the dangerous condition or had constructive knowledge of it," the Fourth Circuit affirmed the trial court's decision refusing to grant Wal-Mart's motion for judgment as a matter of law. *Id.*

In *Ronk v. Corner Kick, Inc.*, 850 F. Supp. 369 (D. Md. 1994), the plaintiff sued a sports facility and its owners, after slipping and falling on water that had accumulated on a racquet ball court. *Id.* at 369-70. The *Ronk* Court concluded: "Where the presence of a foreign substance on a floor is explainable by causes beyond a proprietor's control as well as within it, it is impermissible for a trier of fact to conclude that the proprietor's cause was the cause-in-fact." *Id*. at 371. The *Ronk* Court made this observation in the context of its analysis of whether the defendants had created the wet condition. *See id.* But, this conclusion did not end the court's analysis. The court went on to consider whether the defendants had actual or constructive notice of the wet spot. *See id.*

The case of *Maans v. Giant of Maryland, L.L.C.*, 161 Md. App. 620, 623, 871 A.2d 627, 629, *cert. denied*, 388 Md. 98, 879 A.2d 43 (2005), is also pertinent to causation. There, the plaintiff, who was pregnant, suffered a fall near the checkout lines at a grocery store. The store claimed that it was not negligent in allowing water to remain on the floor, and claimed the plaintiff fell on soda.

The plaintiff "did not see anything on the floor either before or after her fall" and "never felt water, nor did she sense that her clothes were wet." *Id.* at 624; 871 A.2d at 629. An assistant manager testified that she discovered several drops of Citra, a clear soda, on the ground, which she traced to the shopping cart of another customer in a nearby checkout line. *Id.*, 871 A.2d at 629. Nevertheless, with respect to the issue of causation, the Maryland Court of Special Appeals found that the plaintiff offered sufficient evidence for a jury to conclude that she slipped on water rather than on droplets of Citra soda. *Id.* at 629; 871 A.2d at 632. The *Maans* Court said: "Evidence that the assistant manager, immediately after Maans's fall, directed a person with towels in his hand 'to clean up all the water' was sufficient evidence, standing alone, to allow a fact-finder to infer that Maans slipped on water, not on Citra soda." *Id.* at 629-30, 871 A.2d at 632. Despite the existence of an alternate explanation for the plaintiff's fall, the appellate court found that, in light of the evidence presented, the factfinder was entitled to r e j e c t the alternative cause that the defendant had identified as the reason for the plaintiff's slip and fall. *Id.*[4]

To be sure, the facts of the cases cited above are distinguishable from the one *sub judice*. But, the cases illustrate that, in the face of conflicting facts as to issues such as notice and causation, it is not the province of the court to resolve factual disputes.

3.  Affirmative Defenses

As noted, Lowe's claims, *inter alia*, that Mr. Plantholt's claim is barred by the doctrine of assumption of the risk. Plaintiff's motion is the inverse.

---

[4] Notably, however, the *Maans* Court went on to conclude that the plaintiff failed to offer sufficient "time on the floor" evidence, and thus affirmed the trial court's entry of judgment in the defendant's favor. *See* 161 Md. App. at 639-40; 871 A.2d at 638-39.

In Maryland, assumption of the risk and contributory negligence are affirmative defenses that, if proved by the defense, completely bar a plaintiff's recovery. *Crews v. Hollenbach,* 358 Md. 627, 640, 751 A.2d 481, 488 (2000) (assumption of the risk); *Kassama v. Magat*, 136 Md. App. 637, 657 767 A.2d 348, 359 (2001), *aff'd*, 368 Md. 113, 792 A.2d 1102 (2002) (contributory negligence).   Assumption of the risk and contributory negligence "are closely related and often overlapping defenses."  *Schroyer v. McNeal*, 323 Md. 275, 280, 592 A.2d 1119, 1121 (1991).

The doctrine of assumption of the risk "is grounded on the theory that a plaintiff who voluntarily consents, either expressly or impliedly, to exposure to a known risk cannot later sue for damages incurred from exposure to that risk."  *Id.*; *see also ADM P'ship v. Martin*, 348 Md. 84, 90-91, 702 A.2d 730, 734 (1997).  "'Contributory negligence is the doing of, or omitting to do, some act or thing which a reasonably careful person would not have done or omitted to do under the circumstances, and which . . . thereby becomes the . . . proximate cause of the injury.'"  *Miller v. Michalek*, 13 Md. App. 16, 19, 281 A.2d 117, 118 (1971).

In *Poole v. Coakley & Williams Construction, Inc.*, 423 Md. 91, 31 A.3d 212 (2011), the Maryland Court of Appeals noted that "'[t]he same conduct on the part of the plaintiff may . . . amount to both assumption of risk and contributory negligence, and may subject [the plaintiff] to both defenses.'"  *Id.* at 112, 31 A.3d at 224 (citation omitted).   The court explained that "the traditional basis for distinguishing the two doctrines is that 'assumption of risk is the matter of knowledge of the danger and voluntary acquiescence in it, while contributory negligence is a matter of some fault or departure from the standard of conduct of the reasonable person . . . .'"  *Id.* (citation omitted).

The requirements for assumption of the risk are well settled.  *Poole*, 423 Md. at 110-111, 31 A.2d at 224; *ADM P'ship*, 348 Md. at 90-91, 702 A.2d at 734.  "[T]o establish the defense of assumption of risk, the defendant must show that the plaintiff: (1) had knowledge of the risk of the danger; (2) appreciated that risk; and (3) voluntarily confronted the risk of danger."  *ADM P'ship*, 348 Md. at 90-91, 702 A.2d at 734.

Assumption of the risk will apply only if "'the undisputed evidence and all permissible inferences therefrom *clearly* establish that the risk of danger was *fully* known to and *understood* by the plaintiff.'"  *Schroyer*, 323 Md. at 283, 592 A.2d at 1123 (quoting *Kasten Constr. Co. v. Evans*, 260 Md. 536, 544, 273 A.2d 90, 94 (1971) (emphasis in *Kasten*)).  An objective standard is used to determine whether the plaintiff appreciated and understood the risk and whether the action was voluntary.  *Poole*, 423 Md. at 111, 31 A.3d at 224; *Morgan State Univ. v. Walker*, 397 Md. 509, 515 (2007); *ADM P'ship*, 348 Md. at 91, 702 A.2d at 734.  However, "'a plaintiff will not be heard to say that he did not comprehend a risk which must have been obvious to him.'"  *ADM P'ship*, 348 Md. at 92, 702 A.2d at 734 (citation omitted).

Unlike contributory negligence, assumption of the risk does not require a finding that the plaintiff was negligent.  *Schroyer*, 323 Md. at 282-83, 592 A.2d at 1123.  The fact that the plaintiff was aware of the risk, and voluntarily undertook the risk, is sufficient to invoke the defense.  *Id.* at 283, 592 A.2d at 1123.  Put another way, when a plaintiff assumes a risk, the plaintiff's voluntary action in showing a "willingness to take a chance" supersedes any duty the defendant owed the plaintiff to act reasonably for the plaintiff's safety.  *Id.* at 282, 592 A.2d at 1123; *see Prudential Secs. v. e-Net, Inc.*, 140 Md. App. 194, 226-27, 780 A.2d 359, 377-78 (2001).

Of import here, it is ordinarily for the jury to determine whether a plaintiff knew of the danger, appreciated the risk, and acted voluntarily. PROSSER AND KEETON § 68 at 487; *see also Crews*, 358 Md. at 644, 751 A.2d at 490; *Miller v. Michalek*, *supra*, 13 Md. App. at 23, 281 A.2d at 121.  "On the other hand, when it is clear that a person of normal intelligence in the position of the plaintiff must have understood the danger, the issue [concerning knowledge, appreciation of the danger and voluntariness] is for the court." *Schroyer*, 323 Md. at 283-84, 592 A.2d at 1123 (citations omitted).

Notably, the danger of slipping on ice has been identified as one of the risks that anyone of adult age would appreciate.  *ADM P'ship*, 348 Md. at 92, 702 A.2d 730; *Schroyer*, 323 Md. at 284, 592 A.2d 1119.  However, an individual voluntarily assumes a risk only if the individual's freedom of choice is not constrained by the existing circumstances or the appellee's coercion. *ADM P'ship*, 348 Md. at 92, 702 A.2d at 735; *see also Schroyer*, 323 Md. at 283; 592 A.2d at 1123.  Put another way, "the risk is not assumed where the conduct of the defendant has left him no reasonable alternative." *ADM P'ship*, 348 Md. at 92-93, 702 A.2d at 735; *see also Boddie v. Scott*, 124 Md. App. 375, 381, 124 Md. App. 375, 409 (1999).  As the Maryland Court of Appeals explained in *ADM P'ship*, 348 Md. at 93, 702 A.2d at 735, "Where the defendant puts him to a choice of evils, there is a species of duress, which destroys the idea of freedom of election." (Citing PROSSER AND KEETON § 68 at 490-91).  But, when the plaintiff is compelled "'by his own necessities to accept a danger, the situation is not to be charged against the defendant.'" *ADM P'ship.*, 348 Md. at 93, 702 A.2d at 735 (quoting RESTATEMENT (SECOND) OF TORTS § 496E comment b.).

In Maryland, the issue of voluntariness in the slip and fall context has been the subject of many appellate opinions.  For example, a deliveryman injured while bringing kitchen sink tops to

a partially constructed house was deemed to have voluntarily assumed the risk of slipping when he walked on a makeshift bridge of two plywood boards overlying an excavation site. *See Burke v. Williams*, 244 Md. 154, 156-58, 223 A.2d 187, 188 (1966). There, the Maryland Court of Appeals rejected the appellant's argument that he did not assume the risk because the appellee only provided one means of ingress and egress. *Id.* at 157-58, 223 A.2d at 189. The appellant's argument failed because no one required the worker to walk over the plywood, nor was there evidence that his job would have been jeopardized if he had left the sinks outside the house. *Id.* at 158, 223 A.2d at 189. Rather, the appellant took it upon himself to carry the sinks into the house. *Id.*, 223 A.2d at 189.

The plaintiff-employee in *ADM P'ship*, *supra*, 348 Md. at 88, 702 A.2d at 733, fell on an icy walkway as she made a delivery to a business owned by the defendants. The employee acknowledged that she could have returned to her truck and radioed her employer that it was too dangerous to complete the assigned task. *Id.* at 99, 702 A.2d at 738. The court determined there was "no evidence" that the plaintiff's "act of traversing the ice and snow covered parking lot and walkway was not volitional." *Id.*, 702 A.2d at 738. To the contrary, it determined that the plaintiff assumed the risk of falling on ice. *Id.* at 103, 702 A.2d at 740. *See also Velte v. Nichols*, 211 Md. 353, 354-56 (1956), 127 A.2d 544-46 (purchaser assumed the risk when he climbed a ladder, although he was told to do so by the merchant).

*Rountree v. Lerner Development Co.*, 52 Md. App. 281, 447 A.2d 902 (1982), also provides guidance. In *Rountree*, the plaintiff was injured when she fell on an ice-covered step outside her apartment building. *Id.* at 282, 447 A.2d at 902-30. On the day of her injury, the plaintiff awoke and "noticed an accumulation of ice and snow" from her balcony. *Id.* at 283, 447 A.2d at 903. The plaintiff, who was due at work, exited the building "with great caution." *Id.*,

447 A.2d at 903.   She claimed, however, that she had no choice but to use the steps, even though

she knew they were "slick and icy," and "there was no handrail or grip to aid her in ascending

the stairs." *Id.*, 447 A.2d at 903.   The trial court granted the defendant's motion for directed

verdict, "ruling as a matter of law that the appellant had assumed the risk of her fall."   *Id.* at 282,

447 A.2d at 903.

The Maryland Court of Special Appeals reversed.   It concluded that the plaintiff

presented a jury issue with respect to whether she assumed the risk.   *Id.* at 284, 447 A.2d at 904-

05.   The court said, *id.* at 285-86, 447 A.2d at 904-05:

> On the facts of this case, there may have been clear and decisive evidence
> of a "deliberate encountering of a known danger" but that fact, even if assumed to
> be true, is not dispositive of the issue of assumption of risk. In this case, the tenant
> had a right to egress from her apartment. She had a right to assume that the
> landlord would take all appropriate steps to make safe egress possible. Whether
> the landlord did or did not is another issue and not the one upon which this case
> was decided. There was evidence that the appellant delayed her departure for
> work so that both the sun and the workmen would have additional time to
> ameliorate the icy conditions. There was evidence that there was no alternative
> route of egress from the appellant's apartment. . . .
>
> * * *
>
> If there had been evidence in this case that there was a reasonable and safe
> alternative route of egress open to the appellant and that she deliberately chose the
> shorter but more dangerous route, that might well establish as a matter of law that
> she was guilty of having assumed the risk. . . .

*Schroyer*, 323 Md. 275, 592 A.2d 1119, is also instructive.   Upon registering at the hotel,

the plaintiff in that case requested a room near the west entrance, because she had "to 'cart'

boxes and paperwork back and forth to her room," and wanted to be near the exit.   *Id.* at 278, 592

A.2d at 1120-21.   However, she was aware that this particular area of the parking lot had not yet

been shoveled.   *Id.*, 592 A.2d at 1120-21.   The hotel complied with her request, "notwithstanding

the hotel's policy of not assigning such rooms during inclement weather."   *Id.*, 592 A.2d at 1121.

After exiting from her car, the plaintiff again "noticed that the sidewalk near the entrance had not

been shoveled and, furthermore, that the area was slippery."  *Id.* at 278-79, 592 A.2d at 1121.

She "crossed the ice and snow carefully, and without mishap."  *Id.* at 279, 592 A.2d at 1121.

Nevertheless, she slipped and injured herself when she returned to her car to retrieve her

remaining belongings.  *Id.*, 592 A.2d at 1121.  The court concluded that the plaintiff assumed the

risk of slipping on the ice.  *Id.* at 288-89, 592 A.2d at 1125-26.

Similarly, in *Morgan State*, *supra*, 397 Md. 509, 919 A.2d 21, the Maryland Court of

Appeals again held that the plaintiff assumed the risk of falling on the ice.  *Id.* at 511, 919 A.2d

at 21-22.  In that case, the mother of a college student drove to the school several days after a

snowstorm, traveling almost an hour, because her daughter needed money for gas and other

things, and had no ATM card or debit card.  *Id.* at 511, 919 A.2d at 22-23.  After parking in the

school parking lot, the plaintiff exited her vehicle and fell on the ice.  *Id.*, 919 A.2d at 23.  The

court stated, *id.* at 519-20, 919 A.2d at 27 (citations omitted):

> Nothing in the record suggests that Respondent was forced against her will
> to confront the risk of danger of walking on the snow and ice, such that her
> behavior could be classified as involuntarily.  After hearing the crunch of ice and
> snow under her tires and acknowledging that [Morgan] had not removed the ice
> and snow from the parking lot, she proceeded to get out of her car and visit with
> her daughter.  Respondent's motivation stemmed from the fact that she believed
> that her daughter needed money.  In accordance with our prior holdings, [her]
> actions would be considered involuntary only if she lacked the free will to avoid
> the situation.

Notably, the court emphasized that the plaintiff had alternatives, one of which might be

regarded as harsh.  It stated:  "[S]he could have turned her car around and gone home or

arranged an alternative plan by which to get her daughter money, instead of voluntarily

proceeding in the face of danger. . ."  *Id.* at 520, 919 A.2d at 21.

In *Warsham v. James Muscatello, Inc.*, 189 Md. App. 620, 985 A.2d 156 (2009), the plaintiff filed suit against his employer's landlord when he fell as he attempted to salt an icy area.   The trial court granted summary judgment to the defendant and the Maryland Court of Special Appeals affirmed.   The appellate court was satisfied that the plaintiff "was not compelled by the circumstances" to walk across the ice and had alternatives. *Id.* at 653, 985 A.2d at 175.   Moreover, the court noted that in Maryland "the courts have strictly applied the doctrine of assumption of the risk in suits brought by persons who were injured when they fell on ice that was plainly visible." *Id.* at 645, 985 A.2d at 171.

The recent case of *Poole v. Coakley & Williams Construction, Inc.*, *supra*, 423 Md. 91, 31 A.3d 212, is noteworthy.   There, the Maryland Court of Appeals reversed a trial court's award of summary judgment with respect to a personal injury claim for injuries suffered when the plaintiff slipped and fell on black ice. *Id.* at 98; 31 A.3d at 216.

In *Poole*, the plaintiff repeatedly denied that he saw ice in certain areas of the parking lot where he fell.   The court stated that "one's ability to identify black ice, when by its nature is not perceivable or knowable until the moment of experience, means the danger is not necessarily patent.[]"   423 Md. at 119, 31 A.3d at 228.   The court added that it has "consistently held that a plaintiff does not consent to waive claims for liability beyond 'those risks which might reasonably [have been] expected to exist.'" *Id.*, 31 A.3d at 229 (citation omitted). Thus, the court observed that the plaintiff's "knowledge concerning the very existence of the dangerous condition, *i.e.*, the black ice beneath the stream of water that covered the path he trod, was subject to more than one reasonable inference.[]" *Id.*   Of import here, the court concluded that the issue of assumption of the risk was a matter for the jury. *Id.* at 120, 31 A.3d at 229.

**Conclusion**

At this stage, the evidence must be viewed in the light most favorable to the non-movants.  Mr. Plantholt denied that the icy patch was plainly visible.  He described the area as looking wet.  Moreover, there is a factual dispute as to whether Lowe's actually took any safety precautions before Mr. Plantholt fell.

I cannot resolve these factual disputes.  Moreover, I am not persuaded, as a matter of law, that summary judgment is warranted for either side.  To the contrary, this case is quintessentially one for the factfinder.


Date:___April 22, 2015_____            _____/s/_____
                                        Ellen L. Hollander
                                        United States District Judge